U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHELE LEADER ET AL,<br>Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION NO. 04-30055-KPN |
| WAL-MART STORES, INC. ET AL,<br>Defendant. | ) | |

**JOINT PRE-TRIAL MEMORANDUM**

## 1. PLAINTIFF'S EVIDENCE

a. Plaintiff will introduce evidence of her medical treatment and bills for that treatment totaling approximately twenty-five thousand ($25,000.00) dollars.

b. The Plaintiff will introduce evidence of the Defendant's rules, regulations and standards regarding trip and fall injuries.

c. The Plaintiff will introduce evidence of the Defendant's failure to preserve evidence, i.e. videotape of the area of the time and place that the Plaintiff fell.

d. The Plaintiff will introduce evidence of the configuration of the store in the area where she fell.

e. The Plaintiff will introduce evidence of statements she gave and reports made by the Defendant's personnel to the Defendant's Claims Management group.

f. The Plaintiff will introduce evidence of her activities, employment, family and social, prior to and subsequent to her injury.

g. The Plaintiffs will introduce evidence regarding the changes and disruptions to their lives as a consequence of the Plaintiff Michele Leader's physical injuries.

h. The Plaintiff will introduce evidence regarding certain admissions and statements made by Wal-Mart employees, including deposition testimony.

## 2. STATEMENT OF FACTS

**A. Plaintiffs' Statement of Facts**

On February 1, 2002 the Plaintiff Michele Leader was a Special education Teacher in the middle school in Westfield, Ma. She is married to the Plaintiff Lance Leader, and together they have a son Kurtis Leader who was a junior in high school. On that day there was a delay on the start of the school day because of inclement weather. After dropping her son off at school, the

plaintiff Michele Leader went ot the defendant's store in Westfield, MA to purchase a videotape for use wither her Special Educations students.

At that time the Defendant placed what are described as foul weather mats near the entranceway of the store to collect moisture and water. These were two large mats placed in an overlapping fashion, with the overlap facing the direction of the entranceway. The entranceway also had a video camera which recorded people walking in and out of the store.

At that time, and at all relevant times, the Defendant had very specific standards, rules, protocols and regulations which applied to the Defendant at the location of the Plaintiff's injury. Those rules, regulations, standards and protocols required, among other things, that foul weather mats, such as what were placed in the entranceway not be overlapped and that the ends be taped to the floor with red tape. The Defendant also was clearly aware, and had very specific knowledge that such overlapping mats created a tripping hazard and that tripping hazards were a consistent and significant cause of injuries to customers in its stores. The evidence will be that the Defendant store had no discretion to deviate from the standards, rules and protocols requiring that the mats be taped to the floor in order to prevent tripping of customers.

The Plaintiff Michele Leader entered the store, caught her foot on the overlapped mat, staggered and fell very heavily on her hands and knees. At that time Michele Leader was in a general state of good health and suffered no disabling conditions. She was working full time, and performing all of her family and social functions as a mother, wife and social friend and acquaintance of others. She was also performing all of her responsibilities as a Special Education Teacher in a classroom of children with serious behavioral and emotional control disorders requiring her to be physically involved with her students.

After falling, the Plaintiff Michele Leader was helped by several Wal-Mart employees to a chair, provided certain assistance, gave a statement which was prepared by the manager of the Wal-Mart and then transmitted to the Claims Management Service of Wal-Mart. The plaintiff, with the assistance of Wal-Mart personnel, called her husband so that he could come and retrieve her from the store since she was unable to drive and unable to walk. They also assisted her in contacting her employer, the Westfield school system, informing them that she would not be at school. The Plaintiff was taken from the store in a wheelchair, across the slush covered parking lot, to her husband's vehicle who then transported her to the hospital.

The Plaintiff remained out of work for a period of time, but the injury to her knees did not improve. She sought consultation with Dr. John Corsetti of New England Orthopedic Surgeons who prescribed a regimen of conservative care and pain injections, all to no avail. On October 16, 2002 Dr. Corsetti performed an arthroscopy on the right knee of the Plaintiff. As a consequence of the surgery the Plaintiff suffered a Deep Vein Thrombosis (DVT) which required further treatment by a vascular specialist. Dr. Corsetti has found that the Plaintiff has a ten percent (10%) loss of function in each of her knees as a consequence of her injuries.

The evidence will establish that the Plaintiff continues to suffer from debilitating pain and discomfort from her knees and that the disability from which she suffers has been exacerbated by the development of a fibromyalgia condition that has developed. The Plaintiff

Michele Leader remains unable to return to the level of activity and function she experienced prior to the injury.

B. Defendant's Statement of Facts.

Defendant Wal-Mart expects the evidence to show that, on February 1, 2002, Michelle Leader reported that she tripped and fell several steps inside the front entrance of the Westfield Wal-Mart Store. Defendant expects the evidence to show that the alleged accident was not the fault of Wal-Mart and that Ms. Leader was not seriously injured on February 1, 2002. She complained of knee pain immediately after the accident, but she had suffered from knee pain prior to February 1, 2002 and, in fact, was already a candidate for knee surgery due to the wear and tear on both of her knees caused by years of obesity. Ms. Leader was 5'3" and weighed approximately 280 pounds at the time of the accident.

Ms. Leader is expected to testify that she tripped on overlapping bad-weather rugs that were placed a number of yards inside the front threshold of the front door and that, immediately after she fell, a female African-American associate from Wal-Mart approached her and said "I knew this was going to happen." The evidence will show that the only African-American associate working in the area on the date of Ms. Leader's accident was Juanita Slaughter, and she will testify that she has no memory of a heavy white woman tripping on a rug near the front door. Ms. Slaughter will also say that she has never told any customers that she "knew an accident was going to happen." In short, the evidence will show that the bad weather mats used by Wal-Mart did not pose a tripping hazard, and none of Wal-Mart's associates were on notice of any dangerous condition on the date of Ms. Leader's alleged accident.

The evidence will show that, even if there were overlapping bad weather mats such a condition on the day of her alleged accident, they were not dangerous, and they would have been open and obvious to any customer. The evidence will show that there is no record of any other customers tripping and falling on the day of Ms. Leader's alleged accident, and the mere placing of rugs inside the store during bad weather to prevent customers from slipping was not a negligent act.

Ms. Leader has claimed that a man who identified himself as the store manager after Ms. Leader's accident told her that the area where she fell was in view of one of the store's cameras. The evidence will show that where the Plaintiff says she fell was not in the view of any camera, and Wal-Mart did not save any video tapes from the time of the accident because Ms. Leader's alleged accident did not appear to be serious. Even if it had, the video camera aimed at the doorway could not possibly have captured the accident because it was pointing at the front door, and the accident (according to Ms. Leader) occurred several steps inside the store.

## 3. AGREED FACT

1. Plaintiffs Michelle Leader, Lance Leader, and Kurtis Leader are individuals residing at 172 Holyoke Road, Westfield, Massachusetts.

CONTESTED ISSUES OF FACT

1. Whether the Defendant Wal-Mart was negligent in the manner in which it placed foul weather mats inside its store on February 1, 2002.
2. Whether Michelle Leader was negligent while walking in or into the Westfield Wal-Mart on February 1, 2002.
3. Whether, and to what extent, Michelle Leader was injured by any such negligence of Wal-Mart.
4. Whether, and to what extent, Lance Leader was injured by any such negligence of Wal-Mart.
5. Whether, and to what extent, Kurtis Leader was injured by any such negligence of Wal-Mart.

6.. Whether and to what extent the Defendant Wal-Mart Stores, Inc. and/or the Defendant Wal-Mart Stores East, LP operates, and is responsible for a retail establishment located at 141 Springfield Road, Westfield, Massachusetts.

7. The Plaintiff Michele Leader alleges that the medical condition of her knees was directly and proximately caused by and/or contributed to by the injuries sustained on February 1, 2002. The Defendant denies causal relationship.
8. The Plaintiff alleges that the Defendant improperly failed to preserve and maintain a videotape which would have depicted and shown the area of the store where the Plaintiff fell and the Plaintiff actually falling. The Defendant denies that it did anything improper.

## 4. JURISDICTIONAL QUESTIONS

None

## 5. QUESTIONS RAISED BY PENDING MOTIONS

1. Plaintiff's Motion in Limine regarding spoliation of evidence and the sanctions for such spoliation.
2. Plaintiff's Motion in Limine regarding the Defendant's experts and limitations regarding the proposed expert testimony.
3. Plaintiff's Motion in Limine regarding the admissibility of the Defendant's safety rules, regulations and protocols.
4. (DEFENDANT) Whether Defendant Wal-Mart was guilty of spoliation of videotape evidence where no such evidence ever existed.

## 6. ISSUES OF LAW

See comments regarding Plaintiff's Motions in Limine above.

(DEFENDANT) 1. Whether the Defendant Wal-Mart was negligent in the manner in which it placed foul weather mats inside its store on February 1, 2002.

2. Whether Michelle Leader was negligent while walking in or into the Westfield Wal-Mart on February 1, 2002.

3. Whether, and to what extent, Michelle Leader was injured by any such negligence of Wal-Mart.

4. Whether, and to what extent, Lance Leader was injured by any such negligence of Wal-Mart.

5. Whether, and to what extent, Kurtis Leader was injured by any such negligence of Wal-Mart.

6. Whether Defendant Wal-Mart was guilty of spoliation of videotape evidence where no such evidence ever existed.

## 7. REQUESTED AMENDMENTS

None by Plaintiffs

(DEFENDANT) Wal-Mart requests that Wal-Mart Stores, Inc. be removed as a party because it did not own or operate the Westfield Wal-Mart Store at the time of the Plaintiff's accident and, consequently, will bear no responsibility for the payment of any judgment in this matter. The entity that operated the Westfield Wal-Mart Store at the time of the Plaintiff's accident was Wal-Mart Stores East, LP, and Wal-Mart Stores East, LP will be solely responsible for the payment of any judgment in this matter. Plaintiffs were made aware of the name of the proper corporate defendant in August of 2004. Further, should Wal-Mart Stores, Inc. be permitted to remain in the case as an additional defendant, it will have a tendency to confuse the jury.

## 8. ADDITIONAL MATTERS

None

## 9. PROBABLE LENGTH OF TRIAL

4-5 Days-Jury Trial.

## 10 LIST OF WITNESSES

a. Plaintiffs' Witnesses

The Plaintiffs expect some or all of the following individuals and/or entities to offer evidence, by direct testimony or documentary evidence during the trial of this case.

The Plaintiffs reserve the right to substitute witnesses should a listed witness become unavailable and the Plaintiffs reserve the right to add witnesses to meet or rebut testimony introduced at trial.

1. Lance Leader, 172 Holyoke Road, Westfield, MA 01085 – fact, damages testimony
2. Kurtis Leader, 172 Holyoke Road, Westfield, MA 01085 – fact, damages testimony
3. Dianne Walton, friend, Center Street, Ludlow, MA 01056 - fact, damages testimony
4. Ellen Henriques, friend, Westfield, MA - fact, damages testimony
5. Ms. Eleanor Cook, Special Education Supervisor, South Middle School, Westfield, Ma. - fact, damages testimony
6. Mr. Dennis Fahey, Principal, South Middle School, Westfield, Ma. - fact, damages testimony
7. Dr. John Corsetti, MD, New England Orthopedic Surgeons, 300 Birnie Avenue Springfield, MA. – medical testimony
8. Dr. Lorraine Mayer-Wolpert Berman, MD, 3500 Main Street, Suite 201 Springfield, MA 01107-1117 - medical testimony
9. Dr. John D. Kasper, MD, New England Surgical Group, LLP, 401 Chestnut Street, Suite 1, Springfield, MA 01104-3477 - medical testimony
10. Dr. Armand A. Aliota, MD, 48 East Silver Street, Westfield, MA 01085 - medical testimony
11. Alliance Imaging, Inc, 46 Jonspin Road, Wilmington, MA 01887 – medical testimony
12. American Medical Response, 595 Cottage Street, Springfield, MA 01104 - medical testimony
13. Arthritis Treatment Center, 3377 Main Street, Springfield, MA 01107-1135 – medical testimony
14. Dr. Bashir Bashiruddin, Family Medicine Associates, 75 Springfield Road Westfield, MA 01085 - medical testimony
15. Baystate Medical Associates, 3300 Main Street, Springfield, MA 01199 - medical testimony
16. Baystate Medical Center, 759 Chestnut Street, Springfield, MA 01199- medical testimony
17. Baystate MRI and Imaging Center,, 330 Main Street, Springfield, MA 01101 - medical testimony
18. Baystate Pathology Associates, 759 Chestnut Street, Springfield, MA 01199- medical testimony
19. Dr. Paul Bothner, Family Medicine Associates, 75 Springfield Road Westfield, MA 01085 - medical testimony
20. Gregg Condon, PT, Physical Therapy Partners, 65 Springfield Road, Westfield, MA - medical testimony

21. Dr. David J. Desilets, Baystate Medical Associates, 3300 Main Street, Springfield, MA 01199 - medical testimony
22. Dr. Henry Drinker, Hampshire Orthopedics and Sports Medicine, Inc., 65 Springfield Road, Westfield, MA 01085 - medical testimony
23. Dr. Bruce Dziura, Life Laboratories, 299 Carew Street, Springfield, MA 01104 - medical testimony
24. Dr, George Reynolds, MD, Family Medicine Associates, 75 Springfield Road, Westfield, MA 01085 - medical testimony
25. Dr. Robert Gray, Arthritis Treatment Center, 3377 Main Street, Springfield, MA 01107-1135 - medical testimony
26. Dr. Don Goldenberg, Newton-Wellesley Hospital, 2000 Washington Street, Suite 304, Newton, MA 02462 - medical testimony
27. Hampden County Physician Associates, LLC, 77 Boylston Street, Springfield, MA 01103 - medical testimony
28. Jack Jury, PT, Physical Therapy Partners, 65 Springfield Road, Westfield, MA 01085 - medical testimony
29. Dr. James Katz, Noble Hospital, 115 West Silver Street, Westfield, MA 01085 - medical testimony
30. Dr. Jeffrey L. Kaufman, The Vascular Laboratory of Western New England, 3500 Main Street, 2nd Floor, Springfield, MA 01107-0126 - medical testimony
31. Dr. Christopher Keroack, Mercy Medical Center, Comprehensive Weight Management Program, 300 Stafford Street, Suite 254, Springfield, MA 01104 - medical testimony
32. Maria Lankowski, MS RNCS, NPC, Family Medicine Associates, 75 Springfield Road, Westfield, MA 01085 - medical testimony
33. Dr. Steve Lee, Baystate MRI and Imaging Center, 330 Main Street, Springfield, MA 01101 - medical testimony
34. The Maple Surgery Center, 298 Carew Street, Springfield, MA 01104 - medical testimony
35. Mercy Medical Center, Comprehensive Weight Management Program, 300 Stafford Street, Suite 254, Springfield, MA 01104 - medical testimony
36. Dr. James Mueller, Baystate Pathology Associates, 759 Chestnut Street, Springfield, MA 01199 - medical testimony
37. Noble Hospital, 115 West Silver Street, Westfield, MA 01085 - medical testimony
38. Noble Hospital Sports and Rehabilitation, 76 Main Street, Westfield, MA 01085 - medical testimony
39. Physical Therapy Partners, 65 Springfield Road, Westfield, MA 01085 - medical testimony
40. Dr. David Peterson, Noble Hospital, 115 West Silver Street, Westfield, MA 01085 - medical testimony
41. Dr. David J. Pierangelo, Hampden County Physician Associates, LLC, 77 Boylston Street, Springfield, MA 01103 - medical testimony
42. Quest Diagnostics, Nichols Institute, 14225 Newbrook Drive, Chantilly, VA 20153 - medical testimony
43. Dr. John F. Wilinsky, Noble Hospital, 115 West Silver Street, Westfield, MA 01085 - medical testimony

44. Dr. Armand Aliotta , 48 East Silver Street, Westfield, MA 01085 - medical testimony
45. Footit Surgical Supply, 340 Memorial Avenue, West Springfield, MA - medical testimony
46. New England Surgical Group, Dr. John Kasper, Springfield, MA - medical testimony
47. Springfield Anesthesia Service, Inc., 908 Allen Street, Springfield, MA 01118 - medical testimony
48. Webb Family Chiropractic, Westfield, MA - medical testimony
49. Don Byram, 82 Devon Terrace, Westfield, Ma. - fact, damages testimony
50. Juanita Slaughter, 419 Westfield Dr., Westfield, Ma. - fact, damages testimony
51. Linda Gacona, 60 Highland Street, Feeding Hills, Ma. - fact, damages testimony
52. Westfield Public Schools, 22 Ashley Street, Westfield, Ma. - fact, damages testimony
53. Michele Leader, 172 Holyoke Rd., Westfield, Ma. - fact, damages testimony
54. Norma Forney, 115 Alice Burke Way, Westfield, Ma. – fact, damages testimony
55. Gregory Forney, 176 Main St., Wallingford, Ct. – fact, damages testimony
56. Patricia Leader, 1588 East Mountain Rd., Westfield, Ma. – fact, damages testimony
57. Denette Shea, 132 East St., Southampton, Ma. – fact, damages testimony

b. Defendants' Witnesses

1. Michelle Leader, 172 Holyoke Road, Westfield, Massachusetts (lay witness);

2. Lance Leader, 172 Holyoke Road, Westfield, Massachusetts (lay witness);

3. Kurtis Leader, 172 Holyoke Road, Westfield, Massachusetts (lay witness);

4. Don Bryam, Former Store Manager, Westfield Wal-Mart Store, 82 Devon Terrace, Westfield, Massachusetts, 01085 (lay witness);

5. Scott Swain, Current Store Manager, Westfield Wal-Mart Store, 141 Springfield Road, Westfield, Massachusetts, 01085 (lay witness);

6. Juanita Slaughter, People Greeter, Westfield Wal-Mart Store, 141 Springfield Road, Westfield, Massachusetts, 01085 (lay witness);

7. Linda Gacona, Customer Service Associate, Westfield Wal-Mart Store, 141 Springfield Road, Westfield, Massachusetts, 01085 (lay witness);

8. Thomas Goss, M.D., 17 Colonial Dr., Shrewsbury, Massachusetts, 01545 (medical expert);

9. Kirk Johnson, M.D., 33 Oak Avenue, Worcester, Massachusetts, 01605 (medical expert);

10. Amy Vercillo, Rehabilitation and Re-Employment, 28 Bradfield Avenue, Boston, Massachusetts, 02131 (vocational expert);

11. Any and all witnesses called by the Plaintiffs and all rebuttal witnesses as necessary.

Wal-Mart reserves the right to supplement its witness list prior to trial. Wal-Mart reserves the right to call other witnesses depending upon the names of Plaintiffs' witnesses and the availability of other rebuttal witnesses.

**11. LIST OF EXHIBITS**

The Plaintiffs reserve the right to supplement exhibits to be introduced at trial.

a. Plaintiff's Exhibits.
The Plaintiffs may offer some or all of the following items into evidence:

1. Claim Report #L211156 prepared by Don Byram
2. Tape recording and transcript of tape recording of telephone interview of Michele Leader regarding the fall on February 1, 2002.
3. Employment records of Westfield Public Schools of Michele Leader
4. Diagram/Floor plan of Westfield Wal-Mart Store
5. Video tape testimony of Dr. Lorraine Wolpert Berman and exhibits
6. Video tape testimony of Dr. John Corsetti and exhibits
7. Wal-Mart Risk Control document (Byram Ex. 3)
8. Wal-Mart Risk Control document (Byram Ex. 4)
9. Wal-Mart Risk Control document (Byram Ex. 5)
10. Wal-Mart Risk Control document (Byram Ex. 6)
11. Wal-Mart Risk Control document (Byram Ex. 7)
12. Wal-Mart Risk Control document (Byram Ex. 8)
13. Wal-Mart Risk Control document (Byram Ex. 9)
14. Wal-Mart Risk Control document – WM133878C000101
15. Wal-Mart Risk Control document – WM133878C000088
16. Wal-Mart Risk Control document – WM133878C000051
17. Wal-Mart Risk Control document – WM133878C000055
18. Wal-Mart Risk Control document – WM133878C000056
19. Wal-Mart Risk Control document – WM133878C000057
20. Wal-Mart Risk Control document – WM133878C000087
21. Wal-Mart Risk Control document – WM133878C001422-1442
22. Records and Reports of Medical Treatment and Bills rendered to Michele Leader (the Plaintiff is preparing a separate package of the bills and records which will be delivered to the Defendant's counsel for review.)

b. Defendant's Exhibits.

1. Wal-Mart Report of Customer Incident (02/01/02);
2. Recorded interview with Michelle Leader (02/05/02);
3. Sketch of alleged accident scene drawn by Michelle Leader (07/13/04);
4. Floor plan of the Westfield Wal-Mart Store;
5. Foul weather rug exemplar;
6. Michelle Leader's medical records;
7. Expert witness report and curriculum vitae of Kirk Johnson, M.D. (11/21/04);
8. Expert witness report and curriculum vitae of Amy Vercillo (05/20/05);
9. Expert witness report and curriculum vitae of Thomas Goss, M.D. (06/13/05);
10. Any and all exhibits called by the Plaintiffs.

Wal-Mart reserves the right to supplement its exhibit list prior to trial. Wal-Mart reserves the right to call other exhibits depending upon the names of Plaintiffs' exhibits.

**12. AGREED-UPON JURY INSTRUCTIONS:**

1. A corporation like Wal-Mart can only act through its agents or employees. In cases such as this, the Defendant Wal-Mart is responsible for the conduct of its agents and employees acting within the scope of their employment duties and obligations. The law treats corporations as a person and, imposes on it the duties and obligations that the law imposes on any other person.

2. You have heard and received evidence about customer safety standards, rules and regulations adopted and promulgated by Wal-Mart. If you find that Wal-Mart's employees violated Wal-Mart's safety standards for customers, you may consider any such violation to be evidence of negligence by Wal-Mart as to any consequence or injury to a customer that the standards, rules and regulations were intended to prevent. The law provides that any person or entity may voluntarily assume a duty that would not otherwise be imposed on it, and thus may voluntarily assume a duty to provide specific safety measures to protect customers from trip and fall hazards and injuries. In Massachusetts, a duty voluntarily assumed must be performed with due care. If a person voluntarily assumes a duty or undertakes to follow rules or procedures seen as necessary for the protection of another, then that person may be held liable for any harm

caused because of the negligent performance of the undertaking. You must bear in mind that any failure to follow a policy or procedure, while evidence of negligence, does not equal negligence and does not amount to liability without proof that such violation was causally connected to the alleged injury.

The T.J. Hooper, 60 F. 2d 737, 740 (2nd Cir. 1932);
Cottam v. CVS Pharmacy, 436 Mass. 316, 323 – 324 (2002);
Hullum v. Commonwealth, 396 Mass. 1009 (1986) (rescript);
Afienko v. Harvard Club of Boston, 365 Mass. 320, 330 – 333 (1974);
Falvey v. Hamelburg, 347 Mass. 430 (1964);
Fidalgo v. Columbus McKinnon Co., 56 Mass. App. Ct. 176, 184 – 185 (2002);
Hopkins v. Medeiros, 48 Mass. App. Ct. 600, 613 – 614 (2000);
Bergendahl v. Massachusetts Electric Co., 45 Mass. App. Ct. 715, 720 – 721 (1998);
Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 – 793 (1996);
Resendes v. Boston Edison Co., 38 Mass. App. Ct. 344, 358 (1995), further app. rev. denied, 420 Mass. 1105 (1995);
Thurston v. Ballou, 23 Mass. App. Ct. 737 (1987);
Rice v. James Hanrahan & Sons, 20 Mass. App. Ct. 701, 704 (1985);
Johnson v. Boston, 22 Mass. App. Ct. 24, 27 – 28 (1986);
Pignone v. Santa Anita Manufacturing Corp., 17 Mass. App. Ct. 944, 945 (1983);
Torre v. Harris-Seybold Co., 9 Mass. App. Ct. 660, 668 – 673 (1980);
Scott v. Thompson, 5 Mass. App. Ct. 372, 375 – 376 (1977);
Falvey v. Hamelburg, 347 Mass. 430, 435, 198 N.E.2d 400 (1964).

3. Even if Wal-Mart could not have foreseen the precise manner in which the injury to Michele Leader would occur, if you find that Wal-Mart's negligent conduct increased the risk of harm to the plaintiffs, and was a substantial factor in bringing about the plaintiff's injuries, the Defendant will be liable even if other events or conditions were also a factor in causing the Plaintiffs' injuries.

Furtado v. Bishop, 604 F.2d 90 (1st Cir., 1979);
Lawrence v. Kamco, Inc., 8 Mass. App. Ct. 854 (1979).

4. With respect to the Plaintiff Lance Leader's claim for loss of consortium and the Plaintiff Kurtis Leader's claim for loss of parental services, you are not to consider any negligence of the part of the Plaintiff Michele Leader to reduce compensation to them. If you find that Wal-Mart was negligent, and that its negligence was the direct and proximate cause of harm to Plaintiffs Lance and Kurtis Leader, then

the Plaintiff Lance Leader and the Plaintiff Kurtis Leader are entitled to recover the reasonable value of damages for that harm, regardless of whether or not you find Michele Leader contributorily negligent for her injury. The contributory negligence of the Plaintiff Michele Leader cannot be imputed to nor attributed to the Plaintiff Lance Leader or the Plaintiff Kurtis Leader in anyway and you cannot reduce or diminish their recovery because of any contributory fault on her part.

Feltch v. General Rental Co., 383 Mass. 60 (1981).

5. A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time, the witness has said or done something or has failed to say or do something which is inconsistent with the witness' present testimony. If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witnesses such credibility, if any, as you may think it may deserve. If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust any of that witness' testimony. You may reject all the testimony of that witness or give it such credibility as you may think it deserves.

2 Devitt & Blackmar, Federal Jury Practice and Instruction (3rd ed.), section 72:07 (1977).

6. By the fact that the Court has given instructions to you on the issue of damages, you should not conclude that the Court has an opinion relative to liability. It is for you to determine from the evidence and instructions whether there would be any recovery in this case. To award damages, you may only award such damages as are supported by the evidence. You must not indulge in speculation or conjecture.

Carey v. Piphus, 435 U.S. 247 (1978).

THE PLAINTIFF'S
MICHELE LEADER ET AL

Date: 10/21/05

By_______________________
John J. McCarthy, Esquire
Doherty, Wallace, Pillsbury, and
Murphy, P.C.
One Monarch Place
1414 Main Street, 19th Floor
Springfield, MA 01144
Telephone: 413-733-3111
Facsimile: 413-734-3910
BBO# 328280

THE DEFENDANT
WAL-MART STORES, INC. ET AL

Date:

By_______________________
Richard E. Quinby, Esq.
Craig and Macauley
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Tel: (617) 367-9500
Fax: (617) 742-1788
BBO #545641